## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JASON JAYCOX,                          )
                                       )
    Plaintiff(s),                      )
                                       )
    vs.                                )        Case No. 4:19-cv-02650 SRC
                                       )
TEREX CORPORATION, et al.,             )
                                       )
    Defendant(s).                      )

## Memorandum and Order

This is a product liability and negligence case based on Plaintiff Jason Jaycox's fall from a horizontal grinder.  Jaycox filed suit against the grinder's manufacturer, Defendant Continental Biomass Industries, Inc., and Continental's corporate successor, Defendant Terex USA.  Jaycox also sued Terex USA's parent company, Terex Corporation (together, "Terex").  The Court now considers the parties' respective motions to exclude expert testimony.  Docs. 74, 82, 84.

## I.    Background

Jaycox worked as an operations manager at Hansen's Tree Service.  Doc. 94 at ¶ 8. While cleaning the CBI TBG 680 horizontal grinder at the end of the day, Jaycox slipped and fell off of the grinder.  *Id.*  Jaycox alleges that the grinder was defective and unsafe for its intended use because it did not include proper safety protections or sufficient warnings.  Doc. 122.  He asserts three counts against Defendants:  (1) strict liability; (2) negligence; and (3) breach of warranty.  *Id.*

Jaycox, Continental, and Terex all filed respective motions for summary judgment over the interpretation of Continental and Terex USA's asset purchase agreement.  Docs. 79, 71, 76. The Court granted Jaycox's motion for partial summary judgment, Doc. 79.  The Court granted

in part and denied in part Continental's motion for summary judgment, Doc. 71, and denied

Terex's motion for summary judgment, Doc. 76.  Doc. 200.

Defendants jointly moved to exclude the testimony of Jaycox's expert, J. Kenneth

Blundell, Doc. 74.  Jaycox moved to exclude Defendants' experts, Todd Metzger and Brett

Taylor, Docs. 82, 84.  The Court denies Continental and Terex's Joint Motion to Exclude Expert

Testimony of J. Kenneth Blundell, Doc. 74.  The Court denies Jaycox's Motion to Exclude

Expert Testimony of Todd Metzger, Doc. 82, and grants in part and denies in part Jaycox's

Motion to Exclude Expert Testimony of Brett Taylor, Doc. 84.

## II.    Standard

To be admissible, Federal Rule of Evidence 702 requires that expert testimony:  (1) help

the trier of fact determine facts at issue; (2) be based on sufficient facts or data; and (3) be the

product of reliable principles and methods.  In addition, the expert must have reliably applied

those principles and methods to the facts of the case.  *Id.*  The Court must act as a "gatekeeper"

in determining the admissibility of expert testimony and "determine whether the testimony has 'a

reliable basis in the knowledge and experience of [the relevant] discipline.'"  *Kumho Tire Co.,*

*Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*,

509 U.S. 579, 592 (1993)).

The Eight Circuit adopted a three-part test to determine if expert testimony is admissible

under Rule 702.  *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014).

District courts should admit expert testimony so long as: (1) it will be useful to the finder of fact

in deciding the ultimate issue of fact; (2) the proposed witness is qualified to assist the finder of

fact; and (3) the proposed testimony is reliable or trustworthy in the evidentiary sense.  *See id.*

Finally, courts are to resolve all doubts regarding these considerations in favor of the admission of expert testimony.  *Id.*

## III.   Discussion

### A.     Jaycox's expert, J. Kenneth Blundell

Jaycox's expert, Dr. J. Kenneth Blundell, has a Ph.D. in mechanical engineering and is a retired former professor of mechanical engineering at University of Missouri at Kansas City. Doc. 89 at 3; Doc. 89-3 at 1.  Jaycox retained Blundell to testify regarding "the fall protections that Defendants should have included in the design of the Grinder."  Doc. 89 at 2.  Blundell opined that (1) the Grinder was not equipped with a reasonably safe platform from which to perform necessary maintenance; (2) the Grinder lacked necessary fall protections, including handrails and railings; (3) the Grinder was not equipped with necessary slip resistant footings or traction, toe boards, walkways, handholds or tie-ons; (4) the Grinder instructions and warnings failed to provide any warnings regarding the risk of falling and the lack of fall protections; and (5) Mr. Jaycox's fall was the direct result of the above-listed defects in the Grinder.  *See* Doc. 89-1 at 6–7; Doc. 89-2 at 6–7.

Defendants urge the Court to exclude Blundell's testimony in its entirety because it is unhelpful to the jury and because he did not rely on reliable data, methods, or analysis.  Doc. 74.

#### 1.     Assistance to jury

Defendants argue that Blundell's findings can offer no assistance to the jury.  Doc 75 at 6.   Defendants cite *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, 829 F. Supp. 2d 802, 824–27 (D. Minn. 2011), arguing that, like the expert in *Aviva Sports*, Blundell relied only on facts supporting the plaintiff's position and his conclusions were "unsupported by his own testimony and findings."  Doc. 75 at 6.  Defendants claim that Blundell relied only on Jaycox's

deposition testimony and information that Blundell received from Jaycox's counsel. *Id.* at 6. Defendants also point to alleged inconsistencies between Blundell's report and his deposition testimony and how Blundell could not explain his reasoning in certain areas. *Id.* at 7.

Blundell's conclusions are not "so fundamentally unsupported that [they] can offer no assistance to the jury." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 865 (8th Cir. 2010). First, Blundell stated in his report that he relied on more than just an interview with Jaycox and his counsel. Doc. 89-2 at 1–2. Blundell reviewed, among other things, recorded interviews from Jaycox's coworkers about the incident, photographs and design documents for the grinder and similar equipment, owner and operator manuals for the grinder, and his own inspection of the grinder. *See id.*

Second, the Court need not exclude Blundell's opinion due to alleged inconsistencies in his testimony or his supposed inability to explain his reasoning. The examples Defendants cite in their brief all either indicate disagreement with Blundell's conclusions or they misconstrue Blundell's testimony altogether; Defendants fail to demonstrate that Blundell's conclusions have no factual basis. Doc. 75 at 6–7. These arguments are better suited to cross-examination, as they speak to "the weight rather than the admissibility" of Blundell's testimony. *Larson v. Kempker*, 414 F.3d 936, 941 (8th Cir. 2005); *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 955 (8th Cir. 2000).

Further, *Aviva Sports* is distinguishable on the facts. In *Aviva Sports*, the expert attempted to opine regarding the effect of the defendant's advertising representations on thousands of consumers based on an interview of only two people and the review of unspecified online complaints. *Aviva Sports Inc.*, 829 F.Supp.2d at 824–27. The expert did not offer any other factual basis for his opinions, making his conclusions overly speculative. *Id.* Here,

Blundell opined on a single accident based on ample background information, and he referenced multiple industry standards in support of his conclusions.  *See* Doc. 89-2.

Blundell's opinions cover a central issue in this case:  whether the grinder possessed all necessary fall protections.  *See id.*  His opinions will assist the trier of fact in deciding an ultimate issue that is not otherwise within the common understanding of a jury.

### 2.   Reliability

Defendants argue that Blundell did not rely on reliable data, methods, or analysis in coming to his conclusions.  Doc. 74.  Defendants suggest that Blundell's analysis is inadequate: (1) Blundell did not investigate the actions of Jaycox's employer, Hansen's, as a potential alternative cause for Jaycox's injury, (2) Blundell cited industry standards that are inapplicable or that apply to employers rather than manufacturers, and (3) Blundell failed to explain how Jaycox used the grinder as intended or how the proposed modifications to the grinder could have been integrated into the design.  Doc. 75 at 7, 9, 14.

### a.   Inadequate investigation

Defendants argue that Blundell should have investigated whether Hansen's was responsible for Jaycox's injury.  *Id.* at 7.  Blundell concluded that "Jaycox's fall from the Grinder was a direct result of the defective condition of the Grinder which existed at the time the Grinder was designed and sold."  Doc. 89-2 at 7.  Defendants contend that Blundell's failure to account for "obvious alternative explanations for the fall" renders his opinion unreliable.  Doc. 75 at 7.

Defendants assert that Blundell knew of circumstances that would "warrant consideration of Hansen's acts or omissions as part of his causal analysis."  *Id.* at 7.  For example, many of the standards Blundell cited in his analysis reference an employer's obligations with respect to

workplace safety.  *Id.* at 7.  Moreover, Jaycox was not wearing fall protection at the time of the incident,  Jaycox received no training materials on how to safely clean the grinder, and even before the accident, Jaycox told Hansen's that he thought the method of cleaning the grinder was unsafe.  *Id.* at 8.

Jaycox counters that Hansen's liability for the incident is immaterial, as Hansen's is not a party to this action.  Doc. 89 at 9.  Jaycox states that the primary question is whether the grinder was defective at the time Continental designed and sold it, not whether third parties could have mitigated the defect in some way.  *Id.* at 10 (citing *Hopfer v. Neenah Foundry Co.*, 477 S.W.3d 116, 129 (Mo. Ct. App. 2015)).

Usually, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."  *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1997)).  Blundell's failure to address potential alternative causes for the accident does not make his testimony "fundamentally unsupported" by the relevant facts.  *See Cole*, 599 F.3d at 865.  Blundell based his conclusions on his understanding of the alleged design defect as well as witness accounts of Jaycox's accident.  Doc. 89-2 at 7.  Defendants may address deficiencies in Blundell's investigation on cross-examination.  *See Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001).

**b.    Inappropriate standards**

Second, Defendants argue that the standards that Blundell cites are inapplicable to Continental or to the grinder itself.  Doc. 75 at 9.  Defendants contend that Blundell's use of these standards renders his conclusions unreliable.  *Id.* at 9.

Blundell relies on four major industry standards in his report.  Doc. 89-2.  Blundell cited

the American National Standards Institute (ANSI) 1264.1-2007 standard, though it states that it

does not apply to "self-propelled motorized mobile equipment" like the horizontal grinder and is

meant for "industrial and workplace situations" rather than manufacturers like Continental.  Doc.

89-2 at 4–5.  Blundell also analyzed Occupational Safety and Health Administration (OSHA)

standards as part of his analysis, even though OSHA standards deal with the duties of employers,

not manufacturers.  *Id.* at 6.  Blundell also relied on the International Organization for

Standardization (ISO) Draft International Standard (DIS) 12100-1, though he later admitted in

his deposition that the foreseeable misuse provision in that standard may not apply here because

he did not think that Jaycox misused the grinder.  Doc. 89-2 at 6; Blundell Dep. 117:4–118:14.

Blundell relied on the American National Standard for Conveyors and Related Equipment,

American Society of Mechanical Engineers (ASME) B20.1-2000, which talks about protecting

personnel from exposed machinery parts, not fall prevention, and the standard also states that it

does not apply to "integral machine transfer devices" such as a horizontal grinder.  Doc. 89-2 at

5.

Blundell admitted that most of the standards he cited were not specific to the grinder but

explained that the lack of written standards particular to a specific piece of equipment is a

common issue in the industry.  Doc. 89 at 10; Blundell Dep. 54:12–55:2.  Blundell opined, based

on his experience, that designers must often look to "equivalent" standards to determine what

safety considerations they should incorporate into their designs.  *See id.*  Defendants' arguments

over the applicable standards go to the weight of Blundell's testimony rather than its

admissibility.  *Trisko*, 226 F.3d at 955.  Although Defendants fault Blundell for not providing a

concrete test for determining equivalency, Blundell adequately explained his reliance on the

equivalent standards, backed on his 45 years of experience in the industry.  Blundell Dep. 54:12–55:2.

Defendants again cite *Aviva Sports, Inc.*, arguing that Blundell did not provide a complete explanation for why he relied on each of the standards.  829 F. Supp. 2d at 826 ("[W]hile sometimes 'observations and highly specialized expertise may suffice to form the basis of an expert opinion,' [the purported expert] must still 'explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'").  But unlike the expert in *Aviva Sports, Inc.*, Blundell did not simply "provide[] conclusory statements." *Id.*  Blundell described how he selected the equivalent industry safety standards in the absence of an on-point standard for the grinder:  "If you want to make a safe platform, then you go to the portion of the text that considers that. And that – that may accidentally fall into a description which may be a little different than the actual machine you might be looking for, but that's how these standards work . . . if you don't have the exact thing, you go to something that is equivalent to that particular need as far as getting a piece of safety equipment."  Blundell Dep. 54:12–24.  And Blundell explained how each of the standards applied to the facts of the case. *See, e.g., id* at 54:24–55:2.  Blundell's use of these standards in his analysis is not a basis for exclusion.

### c.    Flawed analysis

Third, Defendants argue that Blundell's analysis is flawed because his conclusions are unsupported by the facts in the record.  Doc. 75 at 13.  These arguments challenge the factual basis of Blundell's opinion, so they go to Blundell's credibility rather than admissibility.  *See Arkwright Mut. Ins. Co.*, 125 F.3d at 1183.

Blundell's opined that Jaycox was "required to stand on the Grinder's generator (compressor box) since there are certain areas of the Grinder that you cannot access unless an operator stands on top of the Grinder" and that "[t]he top of the generator is . . . the only platform which allows one to stand with a hose and access all the necessary parts of the Grinder which required cleaning."  Doc. 89-2 at 2.  Defendants point out that the platform Jaycox fell from is no longer attached to that particular grinder, as it is an optional component.  Doc. 75 at 13.  Since employees at Hansen's must still clean the grinder but cannot stand on the compressor box, Defendants argue that Blundell's statement that Jaycox was "required" to stand on the compressor box is inaccurate.  *Id.* at 13.  Blundell later qualified this statement in his deposition: "a clear and obvious place to clean and access the rear of the machine is from that platform." Blundell Dep. 161:3–11.  As this dispute goes to the factual basis for Blundell's statements, Defendants can address the issue on cross-examination.  *Trisko*, 226 F.3d at 955.

Defendants next claim that Blundell's conclusion that Jaycox used the grinder as intended lacks factual support.  Doc. 75 at 14.  The grinder had an engine platform with a safety railing, and the ladder led directly to the engine platform.  *Id.* at 14.  Meanwhile, the compressor box was an optional feature of the grinder, and employees could only access the top of the compressor box by stepping over the safety railing.  *Id.*  Defendants assert that the designers clearly intended for employees to use the engine platform to clean the grinder, not the compressor box.  *Id.*  But Blundell concluded in his report that using the compressor box to access the back of the grinder was a "reasonably anticipated use," not an "intended use."  Doc. 89-1 at 6.  Blundell testified during his deposition that a "reasonably anticipated use" could include "misuse and abnormal use which is objectively foreseeable."  Blundell Dep. 163:13–16.  At most, this testimony implicates a factual dispute between the parties.

Finally, Defendants argue that Blundell's failure to demonstrate how to integrate his proposed modifications into the design of the grinder renders his testimony inadmissible.  Doc. 75 at 14.  Blundell opined during his deposition that the compressor box should have had railings and toe boards on the sides of the platform, but he did not prepare a 3D model of the proposed changes or analyze how Defendants could implement them in the grinder.  Blundell Dep. 65:2– 66:23.  Defendants cite *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1012 (8th Cir. 2005), contending that Blundell's testimony should be excluded for failing to demonstrate that the modifications "would protect the operators but would not interfere with the machine's utility." Doc. 75 at 15 (citing *Unrein*, 394 F.3d at 1012).

*Unrein* does not support Defendants' position.  In *Unrein*, the plaintiff's expert failed to either prepare drawings showing how the safety component would be integrated into the product "or present photographs showing its use with similar machines."  *Unrein*, 394 F.3d at 1012. Unlike the expert in *Unrein*, Blundell provided Defendants with images of similar machines that had platforms with rails, toe boards and other safety components.  Doc. 89 at 14.  Blundell included images of similar products manufactured by both Defendants and their competitors. Doc. 89 at 14.  Because Blundell provided real-life examples of the proposed modifications, Blundell's testimony is "sufficiently grounded to be helpful to the jury."  *See Unrein*, 394 F.3d at 1012.

Overall, Defendants have not shown that Blundell's opinion is "fundamentally unsupported."  *Cole*, 599 F.3d at 865.  The Court denies Defendants' Joint Motion to Exclude Expert Testimony of J. Kenneth Blundell, Doc. 74.

### B.     Defendants' expert, Todd Metzger

Defendants' expert, Todd Metzger, is a mechanical engineer with a bachelor's degree in mechanical engineering from Missouri University of Science and Technology.  Doc. 88 at 2. Metzger evaluated the grinder's design and determined that the grinder had adequate fall protections.  Doc. 83 at 1; Doc. 88-2.  Metzger opined, among other things, that Jaycox could have cleaned the grinder from the grinder's engine platform and that Continental reasonably did not identify the compressor box as a fall risk because the engine platform had adequate fall protections.  *See* Doc. 88-2 at 4.

Jaycox claims that Metzger is not qualified through knowledge, training, or experience to provide an opinion on the safe design of the grinder.  Doc. 83 at 1.  Jaycox also claims that Metzger's opinion on Jaycox's ability to wash the grinder from the engine platform is unreliable because it relies on speculation.  *Id.*

### 1.     Metzger's qualifications

Jaycox argues that Metzger is unqualified to opine on the grinder's fall protections because Metzger does not have experience with industrial processing machines or fall protections.  *See id.*  Jaycox cites *United States v. Cunningham*, 679 F.3d 355, 379 (6th Cir. 2012), which held that an expert's qualification to offer an opinion "depends on the nature and extent of [the expert's] experience."  Doc. 83 at 3.  Jaycox asserts that Metzger's qualifications do not provide an adequate foundation for this particular opinion.  *See Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.").

Jaycox acknowledges that Metzger received his degree in mechanical engineering in 2001 but asserts that Metzger has no experience in designing large industrial processing machines, elevated walkways or working surfaces, or fall protections.  Doc. 83 at 4.  For four years after graduation, Metzger worked at Foster Manufacturing Company designing small couplings that attached to hoses.  *Id.*  Then Metzger took a position designing industrial processes at copper refining facilities and ethanol production plants.  *Id.*  In 2008, Metzger went to work for Schaeffer Engineering, where he still works today.  *Id.* at 5.

Metzger's role at Schaeffer focuses exclusively on forensic engineering, providing expert testimony during litigation.  *Id.*  Metzger worked on fire-related matters at Schaeffer, including fire causation, origin and determination.  *Id.*  Metzger only worked on two matters related to machinery, and both of those involved printing press accidents.  *Id.*  Metzger never before provided testimony on any matters involving machine design or fall protection.  *Id.*

Jaycox points out that Metzger's continuing education concentrates on fire investigation rather than machine design.  *Id.*  While Metzger has taught several college courses, almost all relate to fire causation and origin.  *Id.*  Jaycox concludes that Metzger is not qualified to offer an opinion on the design and fall-safety aspects of Continental's grinder.

Defendants counter that Metzger is qualified through his relevant experience and training, including his degree in mechanical engineering, relevant work experience, and continuing education.  Doc. 88 at 2.  Metzger's degree curriculum focused on the design of machines and machine systems, including machine safety and its application during the design process.  *Id.*  And while Metzger earned his degree, he interned with an industrial and commercial engineering design consulting firm, BIS Frucon, where Metzger helped design machine systems.  *Id.*  At BIS Frucon, Metzger's work included review and analysis of OSHA, ANSI, ASME, and other

12

industry standards, as well as consideration of walking and working surfaces on machines and fall safety protection.  *Id.*

When Metzger worked at Foster Manufacturing Company, his tasks involved machine design, including safety and risk assessments.  *Id.*  After working at Foster, Metzger went back to working for BIS Frucon, where he performed work on industrial processes at facilities with a variety of industrial machines and equipment.  Doc. 88 at 3.  And Metzger often worked on elevated walking and working surfaces at BIS Frucon.  *Id.*

Defendants also observe that Metzger has undergone continuing education relevant to the issues in this case.  *Id.* at 4.  In 2019, Metzger participated in a fall protection course regarding working safely from heights, platforms, and elevated working surfaces.  *Id.*  Metzger participated in a ten-hour OSHA Safety and Health Training Course and an Aerial Lift Training course, both of which incorporated fall protection aspects.  *Id.*  Defendants further note that Metzger is a Registered Professional Engineer in the States of Missouri, Illinois, Arkansas, Kansas, Kentucky, and Iowa, meaning that he underwent a series of examinations and competency reviews in areas including machine design and safety.  *Id.*

The party calling an expert must demonstrate the reliability of the expert's opinion by a preponderance of the evidence.  *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 915 (8th Cir. 2017) (citing *Daubert*, 509 U.S. at 592 n.10).  At the same time, "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony," and it favors admissibility over exclusion.  *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001); *Daubert*, 509 U.S. at 595 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  Therefore, "[c]ourts should resolve doubts regarding the usefulness of an expert's

testimony in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006). Rule 702 "only requires that an expert possess 'knowledge, skill, experience, training, or education' sufficient to 'assist' the trier of fact, which is 'satisfied where expert testimony advances the trier of fact's understanding to any degree.'" *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (internal citation omitted). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Id.* at 1100–01.

Defendants emphasize Metzger's education as a mechanical engineer, his licensing as a professional engineer, and his continued training in OSHA safety standards and fall protection. *See id.* at 1100. While Metzger's machine design experience at Foster and BIS Frucon involved different equipment than a horizontal grinder, Defendants contend that Metzger's overall experience with machine design and elevated working platforms is sufficient to satisfy the requirements of Rule 702. Doc. 88 at 4. The Court agrees. Rule 702 requires that "the area of the witness's competence matches the subject matter of the witness's testimony," but the proposed expert need not be the best-qualified to give the opinion or have the particular specialization that a court deems "most appropriate." *Robinson*, 447 F.3d at 1101 (quoting *Lauria v. Nat'l R.R. Passenger Corp.*, 145 F.3d 593, 598 (3rd Cir. 1998)). Metzger's experience and training will assist the trier of fact in determining whether the grinder had adequate fall protection. *See* Fed. R. Evid. 702. The various gaps or inadequacies Jaycox identifies diminish the weight of Metzger's opinion rather than its admissibility. *Robinson*, 447 F.3d at 1100.

## 2. Metzger's opinion on cleaning the grinder

Jaycox also contends that Metzger did not have adequate information to render his opinion that an operator could safely clean the grinder from the engine platform. Doc. 83 at 6.

14

Metzger never actually attempted to clean the grinder or witnessed anyone trying to clean the grinder. *Id.* Metzger stated in his deposition that an operator's ability to clean the grinder with a two-inch fire hose depends on the water pressure in the hose at the time, but Metzger admitted that he did not know the exact water pressure at the Hansen's work site. Metzger Dep. 78:17–78:20, 80:5–15. Jaycox claims that for Metzger to render his opinion, "he needed information that he did not have," making this opinion an "unsupported speculation." Doc. 83 at 7.

Metzger provided an adequate basis for his opinion. *See* Doc. 88 at 5. Hansen's used a two-inch fire hose connected to a hydrant, and Metzger explained that the average water pressure from a fire hydrant is between 60–100 pounds of force per square-inch (PSI). Metzger Dep. 78:2–80:25. Metzger testified that this setup provides "more than adequate pressure to wash down the entire conveyor" from the engine platform unless the water pressure from the hydrant is "totally abnormal." *Id.* Metzger testified that the distance from the compressor box and the engine platform to the conveyor is "effectively the same distance," so the operator could clean the conveyor from the engine platform just as effectively as from the compressor box. *Id.* Metzger identified his previous experience as a firefighter and fire investigator as part of the basis for his opinion, along with his use of a variety of fire hoses. Metzger Dep. 77:22–78:12.

Metzger's opinion has a sufficient factual basis. Observations and highly specialized expertise can form the basis of an expert opinion. *Kumho Tire Co.,* 526 U.S. at 156. Metzger's four years of experience as a firefighter allow him to opine on the reach of a standard two-inch fire hose. Metzger Dep. 77:22–78:12; Doc. 88-2 at 2. Metzger inspected the grinder and concluded that anything but "totally abnormal" water pressure is sufficient to clean the grinder's rear conveyor from the engine platform and the distance to the conveyor from the engine platform was "effectively the same distance" as from the compressor box. Metzger Dep. 78:2–

80:25.  That Metzger did not know the exact water pressure at Hansen's work site goes to the weight of his testimony, rather than admissibility.  *See Arkwright Mut. Ins. Co.*, 125 F.3d at 1183.

Jaycox cites *Presley v. Lakewood Engineering and Mfg. Co.*, 553 F.3d 638, 646 (8th Cir. 2009), arguing that Metzger's opinion is inadmissible because it is "vague theorizing based upon general principles."  Doc. 83 at 6.  But *Presley* is inapposite.  In *Presley*, the district court excluded a fire expert's opinion because he failed to follow established testing requirements for identifying the origin of a fire—the subject of the expert's opinion.  553 F.3d at 645.  Jaycox presents no similar testing requirements for determining whether an operator could clean the grinder from the engine platform.  Doc. 83 at 6; Doc. 88 at 6.  And Metzger's opinion is not "vague theorizing," as he personally inspected the grinder and observed the relative distances between the two platforms and the back of the grinder.  *See* Doc. 88 at 6.

The Court denies Jaycox's Motions to Exclude Expert Testimony of Todd Metzger.  Doc. 82.

### C.       Defendants' expert, Brett Taylor

Defendants' expert, Dr. Brett Taylor, is an orthopedic spine surgeon.  Doc. 85 at 1. Defendants retained Taylor to review Jaycox's medical records and opine on the nature and extent of Jaycox's spinal injury.  Taylor Dep. 14:2–20.  Taylor gave an opinion on Jaycox's spinal injury and explained that bowel and bladder dysfunction can sometimes result from the compression of the spinal cord, and that a longer duration of spinal cord compression leads to a poorer prognosis.  *Id.* at 14:21–15:11.

Jaycox seeks to exclude certain opinions by Taylor as unreliable.  Doc. 85 at 1–2.  Jaycox takes issue with three opinions:

     (1)  Taylor's opinion that compression of the spinal cord can cause bowel and bladder dysfunction, Taylor Dep. 16:4–16:10;

     (2)  Taylor's opinion that a delay in spinal surgery can affect a patient's prognosis, *Id.* at 66:23–67:1;

     (3)  Taylor's opinion that spinal patients who are also involved in a lawsuit often have worse outcomes due to secondary gain, *Id.* at 84:6–84:11.

Doc. 85 at 1–2.

Secondary gain is a term for the positive benefits someone might experience as a result of their physical symptoms, such as receiving more damages in litigation. Defendants admit that Taylor's opinion on secondary gain "is not an appropriate topic for presentation to the jury" because it potentially comments on Jaycox's credibility and the legitimacy of his pain complaints. Doc. 87 at 5. Accordingly, the Court excludes Taylor's testimony and opinions regarding secondary gain.

### 1.    Taylor's opinion on Jaycox's bowel and bladder dysfunction

Jaycox argues that Taylor is not qualified to render an opinion on the cause of Jaycox's bowel and bladder dysfunction and that Taylor's opinion on the subject relies on inadequate information. Doc. 85 at 4. Taylor did not actually testify as to the cause of Jaycox's bowel and bladder dysfunction, however.

Taylor confirmed that he was "not going to opine on the ultimate etiology of [Jaycox's] bowel and bladder dysfunction." Taylor Dep. 15:15–17. Taylor testified generally that spinal pathologies can contribute to bowel and bladder dysfunction but clarified that he "cannot make a statement on his – the specifics of his particular bowel and bladder dysfunction." *Id.* at 16:4–16:10. Taylor explained that he could testify on Jaycox's bowel and bladder issues "[o]nly to the degree that I can comment as it relates to my knowledge, training, and expertise in spine surgery and that sequelae, but not as a treating physician for specifically bowel and bladder dysfunction." *Id.* at 14:14–20. Taylor opined: "[T]here are circumstances where a spine injury can result in

bowel and bladder dysfunction, and the literature on that subject suggests that the duration of compression [of the spinal cord] is tied to the likelihood and the duration of those pathologies." *Id.* at 14:23–15:3.

Defendants demonstrated the reliability of Taylor's opinion on the general relationship between spinal cord compression and neurogenic bowel and bladder symptoms.  Doc. 87 at 2–4. Taylor is a licensed physician and a practicing spinal surgeon with over twenty years of experience.  *Id.* at 2.  Taylor has also taught as an Assistant Professor of Orthopaedic Surgery for the Washington University School of Medicine.  *Id.*  Taylor acknowledged during his deposition that surgeons like himself do not usually provide rehabilitative care for patients with long-term spinal injuries, but reaffirmed that he is still an expert in spinal injuries and their sequelae.  *Id.* at 14:16–20, 26:14–15, 553:22–54:10.

Taylor admitted he is not an expert in bowel and bladder dysfunction, but Taylor declared that this means he could not opine on "the symptoms of that nature" with any degree of medical certainty.  Doc. 85 at 4; Taylor Dep. 52:23–53:1.  Taylor's opinion is within his area of expertise because it deals with the relationship between spinal injuries and resulting neurogenic bowel and bladder dysfunction, not the bowel and bladder conditions themselves.  Taylor Dep. 14:23–15:3. Taylor is qualified to give his opinion related to spinal injuries and their sequelae.  *See Kruszka v. Novartis Pharms. Corp.*, 28 F. Supp. 3d 920, 927 (D. Minn. 2014) (finding that a qualified oncologist could opine on issues relating to oncological work, including treatment and the effects of treatment, concluding that "[a] medical doctor need not have treated the specific disease at issue to opine on medical matters relating to that condition").

Taylor's opinion has adequate support under Rule 702.  *See* Fed. R. Evid. 702.  Taylor did not opine on what actually caused Jaycox's bowel and bladder dysfunction, so he did not

need to rely on information specific to Jaycox's condition.  *See* Taylor Dep. 14:23–15:3, 15:15–17.  Instead, Taylor testified based on general medical research relating to spinal cord compression and resulting neurogenic bowel and bladder dysfunction.  *See id.*

Jaycox argues that permitting Taylor to testify regarding general medical propositions without directly applying them to the facts of the case contravenes the principles of *Daubert* and Rule 702.  Doc. 101 at 3–4.  Jaycox again cites *Presley*, claiming that "vague theorizing based upon general principles" without supporting analysis is inadmissible.  553 F.3d at 646.  But *Presley* is distinguishable.  *Presley* and its line of cases excluded expert *causation opinions* that described general theories of fire causation and then offered an opinion on the cause of the fire without applying any facts from the record or conducting their own analysis.  *See Presley*, 553 F.3d at 646 (fire expert's causation opinion was inadmissible because of a lack of testing or analysis and because the expert's conclusions required "too great an inferential leap from these bases"); *Pro Serv. Auto., L.L.C. v. Lenan Corp.*, 469 F.3d 1210, 1215–16 (8th Cir. 2006) (fire expert's testimony was inadmissible because he offered a causation opinion without performing any testing and because the opinion rested solely on "vague theorizing based on general principles"); *Weisgram v. Marley Co.*, 169 F.3d 514, 519 (8th Cir. 1999), *aff'd.* 528 U.S. 440 (2000).  Unlike those experts, Taylor did not offer a causation opinion at all.

Taylor testified to a general medical principle:  spinal injuries that compress the spinal cord can result in bowel and bladder issues.  *See* Taylor Dep. 14:23–15:3, 15:15–17.  Although this opinion is reliable and well-supported, it is not case-specific.  *See Smith v. Bubak*, 643 F.3d 1137, 1140 (8th Cir. 2011) ("To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue.").  Taylor did

not apply his opinion to the facts of the case, instead opting to testify on general medical principles.  *See* Taylor Dep. 16:4–16:10, 14:23–15:3, 15:15–17.

In some cases, experts may "educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case," but the testimony must still "address a subject matter on which the factfinder can be assisted by an expert."  Fed. R. Evid. 702 advisory committee's note to 2000 amendment; *see also United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011).  When an expert seeks to educate the jurors on general principles in their field, Rule 702 simply requires that:  (1) the expert is qualified; (2) the testimony addresses a subject matter where the factfinder can be assisted by an expert; (3) the testimony is reliable; and (4) the testimony will "fit" the facts of the case.  *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

The jury will benefit from Taylor's opinion because the consequences of a spinal injury and spinal cord compression are not "within the knowledge or experience of lay people."  *Coutentos*, 651 F.3d at 821.  Taylor's testimony "advances the trier of fact's understanding" of the spinal injury and bowel and bladder dysfunction issues in this case.  *See Robinson*, 447 F.3d at 1100.  Taylor's testimony "fits" the facts of the case because Jaycox suffered a severe spinal injury and later developed bowel and bladder dysfunction.  *See id.*  And Taylor's opinion will provide the jury with insight into how these two conditions relate.  *See id.*  As the Court discussed above, Taylor is qualified to give his opinion and his testimony is adequately supported.  Rule 702 favors admissibility if the testimony will assist the trier of fact, and courts must resolve doubts on an opinion's usefulness in favor of admissibility.  *Clark By & Through Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998).  The Court will not exclude Taylor's opinion on this ground.

## 2.    Taylor's opinion on the delay in Jaycox's surgery

Jaycox seeks to exclude Taylor's opinion that the delay of Jaycox's surgery by more than 48 hours caused his current symptoms.  Doc. 85 at 5.  Jaycox urges that Taylor's opinion regarding the duration of compression on Jaycox's spinal cord is unreliable because Taylor admitted that he couldn't form an opinion as to how the 48-hour delay actually affected Jaycox's symptoms.  *Id.*  But again, Taylor did not testify as to the cause of Jaycox's symptoms, so the Court will not exclude Taylor's testimony.

Taylor opined that Jaycox's prognosis was "not as good" as someone who would have had surgery within 48 hours of their spinal injury because "people who have longer duration compression" generally have a less-favorable outcome.  Taylor Dep. 57:16–60:19.  Taylor added that the "literature is pretty clear that when patients have severe compression of their neural element, their outcome is best if surgery is performed within 48 hours. And so a time period greater than 48 hours has a less favorable prognosis."  *Id.*  Taylor insisted that he "cannot say to a reasonable degree of medical certainty that this particular symptom is worse" and that "I cannot pick and choose which symptoms are worse because of the duration of his condition." Taylor Dep. 67:22–68:19.

Jaycox argues that because Taylor "could not equate the duration of compression to any symptom Plaintiff is experiencing," Taylor's opinion is speculative.  Doc. 85 at 6.  But Taylor only described the risks for patients who wait more than 48 hours to get surgery.  *See* Taylor Dep. 57:16–60:19.  He concluded that Jaycox's prognosis—the span of Jaycox's likely medical outcomes—was worse due to the duration of the spinal cord compression.  *See id.*  As an orthopedic spine surgeon, Taylor is undoubtedly qualified to opine on the prognosis of a patient with a spine injury.  *See Kruszka*, 28 F. Supp. 3d at 927.  And Taylor testified that he relied on

Jaycox's medical records and scans, as well as the applicable medical literature in his field.
Taylor Dep. 5:19–6:12, 57:16–60:19.

Taylor's opinion is not "fundamentally unsupported," *Cole*, 599 F.3d at 865, so the Court
will not exclude Taylor's opinion on Jaycox's delayed surgery.  Accordingly, the Court grants
Jaycox's motion in part and denies in part.  Doc. 84.

## IV.   Conclusion

The Court denies Continental and Terex's Joint Motion to Exclude Expert Testimony of
J. Kenneth Blundell, Doc. 74, and denies Jaycox's Motion to Exclude Expert Testimony of Todd
Metzger, Doc. 82.  The Court grants in part and denies in part Jaycox's Motion to Exclude
Expert Testimony of Brett Taylor, Doc. 84.

So Ordered this 15th day of June 2021.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**